# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF MICHIGAN
# SOUTHERN DIVISION

YUL DARRIUS DUNNING, #158432,

        Petitioner,                        Case Number: 2:11-CV-10543
                                                      HONORABLE NANCY G. EDMUNDS

v.

BENNY NAPOLEON,

        Respondent.
_____/

## OPINION AND ORDER DENYING PETITION FOR WRIT OF HABEAS CORPUS AND DENYING CERTIFICATE OF APPEALABILITY

Petitioner Yul Darrius Dunning has filed a petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2254. Petitioner is in the custody of the Michigan Department of Corrections. He challenges his 2008 convictions for felon in possession of a firearm and possession of a firearm during the commission of a felony. He seeks habeas relief on the grounds that the he was denied the right to testify in his own defense and he received ineffective assistance of trial counsel. Respondent argues that the claims are meritless. The Court finds Petitioner's claims meritless and denies habeas relief.

## I. Facts

Petitioner's convictions arise from his encounter with police on August 8, 2007 in the city of Detroit. City of Detroit police officer Andrew Berry testified that, on that date, at approximately 9:05 p.m., he and his partner Calvin Lewis responded to a call regarding a man with a weapon walking down the street. Officer Berry testified that he saw

Petitioner walking down the sidewalk wearing a black coat, which appeared odd to him given it was a hot August night. Officer Berry exited his police vehicle and approached Petitioner. Petitioner removed a shotgun from his coat and threw it down on the ground as he saw Officer Berry and his partner approach. Officer Berry arrested Petitioner and took him to the police station.

City of Detroit Police Officer Calvin Lewis' description of the circumstances leading to Petitioner's arrest was essentially the same as his partner's. In addition, Officer Berry testified that, once at the police station, Petitioner stated that he was carrying the shotgun because he wanted "to get the drop on the police." Officer Lewis testified that that phrase was street lingo for surprise the police by hurting them or shooting them.

Petitioner's custodial statement was read into the record. In the statement, Petitioner admitted to being in possession of an unloaded shotgun and stated that he did not intend to use the gun on anyone.

After the State rested, Petitioner's counsel moved for a directed verdict on the ground that the shotgun was not a firearm as defined in the two relevant criminal statutes. The trial court denied the motion. Petitioner then took the stand. The record shows that Petitioner carried some papers to the witness stand with him. The Court directed Petitioner to set the papers aside while he testified. Petitioner's attorney asked him to state his name for the record. He did. Defense counsel stated he had no further questions. The prosecutor asked no questions and the Court directed Petitioner to step down. The

Defense rested without calling any further witnesses.

## II. Procedural History

Petitioner was convicted by a jury in Wayne County Circuit Court of felon in possession of a firearm and possession of a firearm during the commission of a felony. On April 3, 2008, he was sentenced to four years' probation for the felon-in-possession conviction and two years in prison for the felony-firearm conviction.

Petitioner filed an appeal of right in the Michigan Court of Appeals, raising these claims:

> I. Mr. Dunning's constitutionally protected right to testify was denied where the court allowed trial counsel to put his client on the stand only to state his name and where Mr. Dunning repeatedly stated on the record a desire to testify and defense himself but the court refused to allow his testimony.
>
> II. The judge erred by (1) refusing to allow Mr. Dunning his constitutional right to testify when Mr. Dunning requested to testify multiple times on the record and (2) failing to take any corrective action to protect Mr. Dunning's rights in the face of counsel's refusal to do so.
>
> III. Defendant counsel was constitutionally ineffective when he made no opening argument, failed to cross-examine witnesses, called his client as a witness and only asked his name, failed to allow his client to testify, and made a closing argument that failed to assist his client. The prejudice caused by Mr. Dunning's ineffective trial counsel should be presumed under *United States v. Cronic*, and Mr. Dunning is entitled to a new trial.

The Michigan Court of Appeals affirmed Petitioner's convictions. *People v. Dunning*, No. 285027, 2009 WL 2974725 (Mich. Sept. 17, 2009).

Petitioner then filed an application for leave to appeal in the Michigan Supreme Court. He raised the first three claims raised in the Michigan Court of Appeals. The

Michigan Supreme Court denied leave to appeal. *People v. Dunning*, 485 Mich. 1134 (Mich. March 31, 2010).

Petitioner then filed this habeas petition. He raises the claims raised in the Michigan Supreme Court.

### III. Standard

The petitioner's claims are reviewed against the standards established by the Antiterrorism and Effective Death Penalty Act of 1996, Pub. L. No. 104-132, 110 Stat. 1214 (AEDPA). The AEDPA provides:

> An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim –
>
> (1)   resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
>
> (2)   resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceedings.

28 U.S.C. § 2254(d).

"A state court's decision is 'contrary to' . . . clearly established law if it 'applies a rule that contradicts the governing law set forth in [Supreme Court cases]' or if it 'confronts a set of facts that are materially indistinguishable from a decision of [the Supreme] Court and nevertheless arrives at a result different from [this] precedent.'" *Mitchell v. Esparza*, 540 U.S. 12, 15-16 (2003) (per curiam) (*quoting Williams v. Taylor*,

529 U.S. 362, 405-06 (2000)). "[T]he 'unreasonable application' prong of the statute permits a federal habeas court to 'grant the writ if the state court identifies the correct governing legal principle from [the Supreme] Court but unreasonably applies that principle to the facts' of petitioner's case." *Wiggins v. Smith*, 539 U.S. 510, 520 (2003) (*quoting Williams*, 529 U.S. at 413). However, "[i]n order for a federal court find a state court's application of [Supreme Court] precedent 'unreasonable,' the state court's decision must have been more than incorrect or erroneous. The state court's application must have been 'objectively unreasonable.'" *Wiggins*, 539 U.S. at 520-21 (citations omitted); *see also Williams*, 529 U.S. at 409. "A state court's determination that a claim lacks merit precludes federal habeas relief so long as 'fairminded jurists could disagree' on the correctness of the state court's decision." *Harrington v. Richter*, __ U.S. __, 131 S. Ct. 770, 789 (2011), *quoting Yarborough v. Alvarado*, 541 U.S. 652, 664 (2004). "Section 2254(d) reflects the view that habeas corpus is a guard against extreme malfunctions in the state criminal justice systems, not a substitute for ordinary error correction through appeal. . . . As a condition for obtaining habeas corpus from a federal court, a state prisoner must show that the state court's ruling on the claim being presented in federal court was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement." *Id.* at 786-87 (internal quotation omitted).

Section 2254(d)(1) limits a federal habeas court's review to a determination of whether the state court's decision comports with clearly established federal law as

determined by the Supreme Court at the time the state court renders its decision. *See Williams,* 529 U.S. at 412. Section 2254(d) "does not require citation of [Supreme Court] cases – indeed, it does not even require *awareness* of [Supreme Court] cases, so long as neither the reasoning nor the result of the state-court decision contradicts them." *Early v. Packer*, 537 U.S. 3, 8 (2002). "[W]hile the principles of "clearly established law" are to be determined solely by resort to Supreme Court rulings, the decisions of lower federal courts may be instructive in assessing the reasonableness of a state court's resolution of an issue." *Stewart v. Erwin*, 503 F.3d 488, 493 (6th Cir. 2007), *citing Williams v. Bowersox*, 340 F.3d 667, 671 (8th Cir. 2003); *Dickens v. Jones*, 203 F. Supp. 2d 354, 359 (E.D. Mich. 2002).

Lastly, a federal habeas court must presume the correctness of state court factual determinations. See 28 U.S.C. § 2254(e)(1). A petitioner may rebut this presumption only with clear and convincing evidence. *Warren v. Smith*, 161 F.3d 358, 360-61 (6th Cir. 1998).

### IV. Discussion

### A. Violation of Right to Testify Claim

Petitioner's first and second claims involve the alleged denial of his right to testify in his own defense at trial. It is well-established that a criminal defendant has a constitutional right to testify in his own behalf. *See Rock v. Arkansas*, 483 U.S. 44, 52-53 & n. 10 (1987). The right to testify on one's own behalf may be limited "to accommodate other legitimate interests in the criminal trial process" that are not "arbitrary or

6

disproportionate to the purpose they are designed to serve." *Neuman v. Rivers*, 125 F.3d 315, 318 (6th Cir. 1997).

The Michigan Court of Appeals held that Petitioner's right to testify was not violated because a defendant does not have the right to testify to conclusions of law. The Michigan court of Appeals reasoned:

> An alleged violation of a defendant's right to testify is a question of law subject to de novo review on appeal. *People v. Sierb*, 456 Mich. 519, 522, 581 N.W.2d 219 (1998). "A defendant's right to testify in his own defense stems from the Fifth, Sixth, and Fourteenth Amendments of the United States Constitution." *People v. Boyd*, 470 Mich. 363, 373, 682 N.W.2d 459 (2004). The right to testify is also entrenched in the Michigan Constitution, Const 1963, art 1, §§ 17, 20. *People v. Simmons*, 140 Mich.App. 681, 683, 364 N.W.2d 783 (1985). However, this right is not without limitation and may bow to accommodate other legitimate interests in the criminal trial process. *People v. Solomon* (Amended Opinion ), 220 Mich.App. 527, 534, 560 N.W.2d 651 (1996).
>
> Defendant, who was the only witness called by defense counsel, testified as follows:
>
>> Defense Counsel: Would you please give your name for the record.
>>
>> Defendant: Yul Darrius Dunning.
>>
>> Defense Counsel: I have no further questions of this witness, your Honor.
>>
>> Prosecutor: I don't either.
>>
>> Trial Court: All right. You may step down, sir.
>
> Defendant argues under *People v. Forbush*, 170 Mich.App. 294, 299, 427 N.W.2d 622 (1988), that although a defendant cannot commit perjury, a defendant can testify concerning "ultimate facts" that concern legal definitions and the "legal elements of the crime." Specifically, defendant contends that his testimony would have supported an attack on the legal

7

> elements of felon in possession of a firearm because defendant believed that his right to possess a firearm had been restored and that the weapon he was carrying was not a firearm. However, this Court does not allow any type of witness to testify about conclusions of law "because it is the exclusive responsibility of the trial judge to find and interpret the applicable law." *People v. Lyons*, 93 Mich.App. 35, 45–46, 285 N.W.2d 788 (1979).
>
> Defendant cites *Forbush*, which addressed how perjury prosecutions could not be based on a defendant's statements regarding ultimate facts, which are "the legal definitions and effects ascribed to the basic facts, such as statements regarding the noncommission of a crime charged or a legal element of the crime." *Forbush*, *supra* at 299, 427 N.W.2d 622. However, the substance of defendant's proposed testimony was not to address any facts, but to argue legal conclusions based on his view of the applicable statutes. Defendant did not want to address ultimate facts. Rather, he wanted to testify regarding a reinterpretation of the applicable statutes to support his view that his right to carry a firearm had been restored and the weapon he was carrying was not a firearm. Further, on appeal, defendant does not argue or provide any basis that his views regarding the applicable statutes have any merit. Additionally, defendant provides no basis for his view that the weapon he was carrying did not constitute a firearm. Although there is a constitutional right to testify, defendant provides no authority that this right entails inadmissible testimony. The only testimony that defendant indicates he wished to give relates to his conclusions of law through his own view of the applicable statutes. Therefore, because the basis of defendant's proposed testimony was his own conclusions of law, he was not denied the right to testify.

*Dunning*, 2009 WL 2974725 at *1.

The morning after Petitioner was called to testify, the trial court conducted an extensive colloquy with Petitioner and defense counsel regarding the limitations on Petitioner's testimony. That colloquy makes clear that Petitioner wished to testify as to the correct interpretation of the relevant statutes and whether his conduct fell within the prohibited conduct. The exchange on the day of trial and the colloquy the following day support the Michigan Court of Appeals' finding that Petitioner wished to testify as to his

8

own interpretations of the relevant statutes.  Petitioner points to no Supreme Court precedent requiring a court to allow a criminal defendant to testify as to his own legal conclusions and the Court is aware of none.  The limitations placed by the trial court on Petitioner's testimony were not arbitrary or disproportionate to the purposes served.  Therefore, the Court finds that the state court's decision was not contrary to or an unreasonable application of Federal law.

### B.  Ineffective Assistance of Counsel Claim

In his third claim, Petitioner argues that his trial attorney was ineffective in failing to make an opening argument or cross-examine witnesses, calling his client as a witness and only asking his name, and in making a closing argument that failed to assist his client.  Petitioner argues that counsel's performance was so deficient prejudice should be presumed under *United States v. Cronic*, 466 U.S. 648 (1984).

To establish that he received ineffective assistance of counsel, a petitioner must show, first, that counsel's performance was deficient and, second, that counsel's deficient performance prejudiced the petitioner.  *Strickland v. Washington*, 466 U.S. 668, 687, 104 S. Ct. 2053, 2064 (1984).  A petitioner may show that counsel's performance was deficient by establishing that counsel's performance was "outside the wide range of professionally competent assistance."  *Id.* at 689, 104 S. Ct. at 2066.  This "requires a showing that counsel made errors so serious that counsel was not functioning as the 'counsel' guaranteed by the Sixth Amendment."  *Id.* at 687, 104 S. Ct. 2064.

To satisfy the prejudice prong, a petitioner must show that "there is a reasonable

probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Id.* at 694. However, a petitioner need not demonstrate prejudice in instances where the circumstances arising in the case "are so likely to prejudice the accused that the cost of litigating their effect in a particular case is unjustified." *U.S. v. Cronic*, 466 U.S. 648, 658 (1984). Prejudice will be presumed where a defendant is denied the assistance of counsel at a critical stage in the proceedings. *Id.* at 659. A critical stage of a criminal proceeding is "a step of a criminal proceeding . . . that h[olds] significant consequences for the accused." *Bell v. Cone*, 535 U.S. 685, 695-96 (2002). Where counsel is absent or denied in such instances, "the likelihood that the verdict is unreliable is so high that a case-by-case inquiry [of prejudice to the defendant] is unnecessary." *Mickens v. Taylor*, 535 U.S. 162, 166 (2002) (*citing Cronic*, 466 U.S. at 658-59 & 659 n. 26). The "individual inquiry into whether counsel's inadequate performance undermined the reliability of the verdict" is forgone only in such cases. *Id.*

A court's review of counsel's performance must be "highly deferential." *Id.* at 689, 104 S. Ct. 2065. Habeas relief may be granted only if the state-court decision unreasonably applied the standard for evaluating ineffective-assistance-of-counsel claims established by *Strickland*. *Knowles v. Mirzayance*, 556 U.S. 111, 122-23, 129 S. Ct. 1411, 1419-20 (2009). "The question is not whether a federal court believes the state court's determination under the *Strickland* standard was incorrect but whether that

determination was unreasonable – a substantially higher threshold." *Id.* at 123, 129 S. Ct. at 1420 (internal quotation omitted).

The Michigan Court of Appeals recognized that prejudice may be presumed when "defense counsel 'entirely fails to subject the prosecution's case to meaningful adversarial testing.'" *Dunning*, 2009 WL 2974725 at *3, *quoting Bell v. Cone*, 535 U.S. 685, 696 (2002). The Michigan Court of Appeals held that defense counsel, though faced with "insurmountable facts," subjected the prosecution's case to meaningful adversarial testing so that prejudice would not be presumed. *Id. Cronic's* presumption of prejudice is applied only where "'the constructive denial of counsel and the associated collapse of the adversarial system is imminently clear.'" *Ivory v. Jackson*, 509 F.3d 284, 295 (6th Cir. 2007), *quoting*, *Moss v. Hofbauer*, 286 F.3d 851, 860 (6th Cir. 2002). Nothing in the record makes imminently clear a collapse of the adversarial system. Defense counsel was obviously alert, present and prepared for trial. Counsel effectively cross-examined witnesses and presented a defense within the parameters of the evidence presented at trial. Thus, the Court finds that the Michigan Court of Appeals correctly declined to presume prejudice.

Petitioner argues counsel was ineffective in failing to give an opening statement. An attorney's failure to give an opening statement is presumed to be a matter of professional judgment. *Moss*, 286 F.3d at 863. An opening statement is unnecessary where, as here, defense counsel does not expect to introduce any evidence to substantiate the opening statement. *Id.* Moreover, Petitioner has not shown how he was prejudiced by

counsel's decision not to make an opening statement.

Second, Petitioner argues that counsel was ineffective in failing to cross-examine two witnesses, police officers William Robinson and Kevin Payton. The Michigan Court of Appeals held that, while counsel declined to cross-examine two witnesses, counsel thoroughly cross-examined one of the arresting officers, elicited helpful testimony from another police witness regarding the type of weapon recovered, and extensively *voir dired* William Robinson, the officer who took Petitioner's statement, to determine whether Petitioner's constitutional rights were violated during police questioning. The state court concluded that counsel's decision not to cross-examine two witnesses was reasonable. This Court agrees. Once it was determined that Petitioner's constitutional rights were protected when his statement was obtained, no potentially advantageous avenue of cross-examination remained. Officer Payton's testimony concerned only whether the shotgun was tested for fingerprints. Officer Payton testified that he did not test the shotgun because the arresting officers saw Petitioner with the firearm and Petitioner admitted to Officer Robinson that he was holding the firearm. Petitioner fails to identify any potentially useful line of cross-examination of Officer Payton that defense counsel should have pursued nor does the Court discern any. Counsel's decision not to cross-examine these witnesses was reasonable.

Next, Petitioner argues that counsel was ineffective in calling him as a witness but asking him only his name. Petitioner claims that counsel therefore denied him his right to testify. As discussed above, the trial court clearly ruled that Petitioner would not be

12

permitted to testify regarding his interpretations of the relevant statutes. Petitioner offers no other testimony he wished to give. Petitioner cannot show that counsel was ineffective in failing to ask questions that violated the limitations placed on his testimony by the trial court.

Finally, Petitioner argues that defense counsel's closing argument did nothing to assist his defense. Counsel's closing argument, in its entirety, was:

> Ladies and gentlemen of the jury, you heard the evidence in this case. You got a decision to make. Real simple. Thank you very much.

Tr., 3/17/08 at 131.

The brevity of a closing argument, by itself, is not evidence of constitutionally deficient performance. *Moss*, 286 F.3d at 869. Petitioner was seen carrying a shotgun by two police officers, he had a prior felony conviction, and he admitted in a custodial statement that he was carrying the shotgun. No evidence was presented at trial that defense counsel could have highlighted in an attempt to raise a reasonable doubt as to Petitioner's guilt. "[C]ounsel has wide latitude in deciding how best to represent a client, and deference to counsel's tactical decisions in his closing presentation is particularly important because of the broad range of legitimate defense strategy at that stage." *Yarborough v. Gentry*, 540 U.S. 1, 5-6 (2003). Trial counsel's closing argument met an objectively reasonable level of representation. Petitioner has not shown a reasonable probability that, if defense counsel had given a comprehensive closing argument, the result of the proceeding would have been different. Habeas relief is denied on this claim.

### V. Certificate of Appealability

"The district court must issue or deny a certificate of appealability when it enters a final order adverse to the applicant." Rules Governing § 2254 Cases, Rule 11(a), 28 U.S.C. foll. § 2254. Title 28 U.S.C. § 2253 governs appeals in § 2254 proceedings and provides, in pertinent part: "A certificate of appealability may issue ... only if the applicant has made a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2). The Supreme Court has explained that when a district court denies a habeas petition on the merits of the claims presented, a certificate may issue if the petitioner demonstrates that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong. *Slack v. McDaniel*, 529 U.S. 473, 484, 120 S. Ct. 1595, 1604 (2000). If a petitioner makes the requisite showing and a district court grants a certificate of appealability, the court must indicate the specific issue or issues for which the applicant made a substantial showing of the denial of a constitutional right. 28 U.S.C. § 2253(c)(3).

For the reasons stated in this Opinion and Order, the Court finds that Petitioner has failed to make a substantial showing of the denial of a constitutional right. Therefore, a certificate of appealability shall not issue in this case.

### VI. Conclusion

Accordingly, **IT IS ORDERED** that the petition for a writ of habeas corpus is **DENIED** and the matter is **DISMISSED WITH PREJUDICE.**

**IT IS FURTHER ORDERED** that a certificate of appealability is **DENIED**.

s/Nancy G. Edmunds
Nancy G. Edmunds
United States District Judge

Dated: February 5, 2014

I hereby certify that a copy of the foregoing document was served upon counsel of record on February 5, 2014, by electronic and/or ordinary mail.

s/Johnetta M. Curry-Williams
Case Manager
Acting in the Absence of Carol Hemeyer